BLAKE v. THE BURLINGTON, CEDAR RAPIDS AND
NORTHERN RAILWAY COMPANY.

78 57
s89 10

Railroads : INJURY TO PASSENGER RIDING ON SHOW-CAR : COMPANY'S CONTRACT: CONSENT: EVIDENCE. Plaintiff's intestate was riding on a first-class ticket on one of defendant's passenger trains. He belonged to a theatrical company, which had a car containing wagons, baggage, scenery, etc., in the train next to the locomotive, and it was his duty to care for and look after the scenery. The train as made up of the show-car, a baggage-car, a smoking-car, two passenger coaches and a sleeper, arranged in the order in which they are named, came into the defendant's hands from another company at the northern terminus of its road, for transportation southward. The show-car was fitted up with bunks for sleeping purposes, and possibly with heating apparatus. Plaintiff's intestate, with others of the company, was riding in one of the passenger coaches, but about ten or eleven o'clock p. m., they repaired to the show-car and went to bed, and while there the conductor took up their tickets, and told them that they must not ride there; that it was not a safe place to ride, and that it was against the rules of the company. But plaintiff's intestate answered that he did not want to go back in the train to ride, because he would have

to get 'up too early in the morning. His destination was Cedar Rapids, where the show-car was to be set out at 2:30 o'clock in the morning, and he continued to ride in the show-car. Before reaching Cedar Rapids the train collided with another train, and plaintiff's intestate was thereby killed, though none of the passengers in the passenger coaches were hurt. The show-car was of weak construction, and was filled with heavy articles, and for these reasons, as well as on account of its position in the train, it was not a safe place to ride, and there was no evidence that it was the duty of plaintiff's intestate to ride therein in caring for the scenery, nor was there any evidence that the company knew when they received the car that it was constructed with any conveniences for passengers. Held, in an action by the administrator, in which defendant's negligence is conceded, that plaintiff's intestate was guilty of contributory negligence in riding in an unsafe place, and that there was no evidence to justify a verdict for plaintiff, either on the ground that the company had, by receiving the train as it did, contracted to carry passengers in the show-car, nor on the ground that the conductor had consented to their riding there.

*Appeal from Blackhawk District Court.*—Hon. J. H. Preston, Judge.

FILED, JUNE 3, 1889.

ACTION for personal injuries on defendant's road, resulting in the death of plaintiff's intestate. Judgment for plaintiff, and defendant appeals.

*O. C. Miller* and *S. K. Tracy*, for appellant.

*Boies, Husted & Boies*, for appellee.

GRANGER, J.—On the night of January 9, 1883, the defendant company placed in and was taking over its road from Albert Lea, Minnesota, to Cedar Rapids, Iowa, as a part of its passenger train, a car owned by the theatrical company known as "Lights of London." In this car were wagons, baggage, scenery and other paraphernalia of the company. In one end of the car were three bunks or places for persons to sleep, with blankets and straw or other bedding. The train consisted of a sleeper, two passenger coaches, a smoker, a baggage-car, and the show-car in question; the

show-car being between the baggage-car and the engine. Plaintiff's intestate, with four other employes of the theatrical company, were on this train, which was expected to arrive at Cedar Rapids about 2:30 a. m. At Norris, and before reaching Cedar Rapids, the train collided with the north-bound passenger train, and plaintiff's intestate, Thomas Scott, was killed, and this action is by his administrator to recover therefor. At the time of the accident the deceased and the other employes of the theatrical company were in the show-car. There were passengers in all the other cars, and none of them were injured. The controlling question in the case is as to the negligence of the deceased in being in the car in question; the claim of appellant being that he had no right to be there while the car was in transit, and that the fact of his being there was negligence which contributed to his death.

For the purposes of the case the negligence of the defendant company is unquestioned, and the question of contributory negligence alone requires our attention. The testimony undisputed shows the car in question to have been one of unusual length, high, narrow and flimsily built. It was not a car of usual strength, i. e., like other cars for the transportation of passengers or freight. It seems to have been constructed with especial reference to transporting the property of this company. Being next to the engine, it was in what is considered the most dangerous place in the train, and, as we understand, there is no contention but that it was in fact a dangerous place to ride, and that it was negligence for Scott to ride there, unless he was there in some manner by the consent of the railroad company; and appellee urges this ground upon one of two grounds : (1) That the contract for the transportation of the car entitled him to be there, and (2) that he was there by the consent of the conductor in charge of the train; and we notice each in its order.

I. The train, as composed, came from Minneapolis to Albert Lea, over another road, and was at Albert Lea transferred to defendant's road, and in the condition we

have described it.  We are left entirely to deduction
for the terms and conditions of the contract for the
transportation of the car, as there is no proof whatever
of an express contract.  The only evidence we have of
an agreement to transport the car is the fact that it was
being transported with the knowledge of both parties.
That fact is sufficient to justify an inference of an agree-
ment, expressed or implied, and that there was some
kind of an agreement is not questioned.  It is, however,
questioned that there was any agreement or understand-
ing for the transportation of the deceased in the car in
which he was injured, and it is appellant's theory of
the case that there is no such testimony of an agreement
to that effect as will sustain a verdict for the plaintiff.
Counsel for appellee  have  grouped  a state of facts
claimed to be sustained by the evidence, and on which
they urge that the jury could legally find a contract
justifying the deceased in being in the car at the time
he met his death, and they are as follows :  "We have
a case, then, where it is established that the defendant,
on the ninth of January, 1883, was transporting a car
in which was being carried the stage scenery and other
property of a traveling troupe of showmen; that by
virtue of his employment plaintiff's decedent had
charge of the property being so transported; that the
car in which it was being transported was warmed by a
fire and supplied with bunks for sleeping purposes;
that the train in which the car in question was being
transported would, if on time, reach Cedar Rapids, the
destination of said car, at 2 : 30 a. m.; that about ten or
eleven o'clock one of the men, in company with plain-
tiff's decedent, said it was time to turn in, and all went
forward in the direction of the car in question, and all
were in said car when the accident occurred."

The facts as stated have sufficient support in the
testimony to be treated as facts, except that as to the
fire in the car, and as to that we find no evidence, except
that after the accident the conductor says he "put out
the fire," which may have been the result of a fire kept
in the car, or the lighting of the car.  But we think

that of little importance. These facts, reviewed alone, are, to say the most for them, very meager to justify a finding that the defendant company understood that these men were to ride in this car. There is no proof that the company knew anything of the internal arrangement of the car, when accepting it for transportation. This car was to be set out of the train a little after midnight, when these five men would leave the train, and it is certainly as reasonable to say that the conveniences were for their comfort after the car should reach its destination as for them to occupy it *en route*, and we think more so, considering the dangerous position of the car in the train. But other evidence equally undisputed is to be considered. It is to be kept in mind that no one testifies that it was the duty of Scott to ride in this car, to care for the property. His wife says : "My husband's duty was to look after and care for the scenery used by the company and transported in their car." He had, and surrendered to the conductor, first-class tickets, entitling him and the men with him to seats in the passenger coach. These tickets were taken from him in the car where he was injured. The conductor, when taking the tickets, told them "that they must not ride there ; that it was not a safe place to ride ; and it was against the rules of the company." He said "he didn't want to go back in the train to ride, because he had got to get up too early in the morning, going to Cedar Rapids." We think the answer of the deceased quite important in this connection, as indicating his idea of his duties as to caring for the property, or his right to ride in the car. But he does not assign any duty or right as his reason, but if he went back in the train "he had to get up too early." This is as undisputed as any other fact in the case. It is unreasonable to suppose the company would contract for men to ride and sleep in such a place without some special duty required it, both on account of the location of the car in the train, and of the car being loaded with heavy loose articles, adding much to the danger in case of accident. Something is said in argument as to which

party has the burden to show the character of the contract. We think in such a case it is with the plaintiff. The plaintiff's claim as to intestate's right to be in a place of such danger makes an exception to the general contract of carriage, and he assumes the burden to show it. We think there is no testimony to justify a finding by the jury that the defendant contracted to carry plaintiff's intestate in the car in question.

II. Is there testimony upon which a finding can rest that the deceased was in the car with the consent of the conductor in charge of the train? Little need be said on the question. Let it be conceded that, if there by the consent of the conductor, his negligence was excused; what are the facts? We merely refer to the statements of the conductor as shown in the other division of this opinion. We think it is true that thereafter the conductor knew these men were in that car, and that is claimed as a consent that would make the company liable. While it might be construed as a consent for them to remain at their peril, nothing more could be claimed for it. He had warned them of the danger; had informed them that they were violating the rules of the company, and that they must not ride there. What more could a conductor have done, except to force them out? It is plainly manifest that these men, after this warning, remained there to take their chances, and it proved, as to some, a sad experience. The rules of the company required the conductor to caution men when in dangerous places on the train. The rule is a judicious one, and in this case was faithfully observed. We do not think it necessary for the conductor to repeat the warning, or to "remonstrate," as suggested in argument. Such a warning ought to be sufficient for any prudent man. We think the verdict is so wanting in testimony for its support that the district court should have granted a new trial on defendant's motion.

                                        REVERSED.